UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **ELTTES, LLC,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **NTNS ACCOUNTING AND TAX** | § | **CIVIL NO. 1:22-CV-01048-LY** |
| **SERVICES, INC., JOHN HANCOCK** | § | |
| **LIFE INSURANCE COMPANY, and** | § | |
| **JOHN HANCOCK ASSIGNMENT** | § | |
| **COMPANY,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE DISTRICT COURT**
**UNITED STATES DISTRICT JUDGE**

Before the Court are John Hancock Life Insurance Company (USA) and John Hancock Assignment Company's Motion to Dismiss Plaintiff's Petition for Declaratory Judgment and Brief in Support, filed October 24, 2022 (Dkt. 2); Plaintiff's Motion to Remand, filed November 9, 2022 (Dkt. 6); and the associated response and reply briefs. The District Court referred the motions to this Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 18.

## I. Background

Richard Rhinehart settled a civil lawsuit in 2008. Dkt. 1-1 (First Amended Original Petition for Declaratory Judgment) ¶ 10. The structured settlement provided for monthly payments to be made to Rhinehart (the "Rhinehart Receivable"), and Defendant John Hancock Assignment Company was assigned the obligation to make the settlement payments. John Hancock Assignment

Company purchased an annuity from its affiliate, Defendant John Hancock Life Insurance Company (USA)[1] (collectively, the "Hancock Defendants"), to fund the payments. *Id.*

In 2012, Rhinehart sought to transfer the receivable to a third party, Kaybel, LLC, for a lump sum payment. *Id.* ¶ 12. Because Rhinehart was a California resident, the transfer was subject to the California Structured Settlement Protection Act, CAL. INS. CODE § 10134 *et seq.*, which requires court approval of structured settlement transfers. *Id.* Kaybel initiated the transfer and designated Defendant NTNS Tax and Accounting Services, Inc. as its assignee. *Id.* ¶ 14. The Superior Court of Kern County, California entered an order approving the transfer and assignment on March 19, 2012 (the "2012 Order"). Dkt. 1-1 (Exhibit A). Under the 2012 Order, the Hancock Defendants are to start monthly payments to NTNS in 2035. *Id.* The 2012 Order further states that "in the event that Kaybel and/or Assignee attempts to further assign the Assigned Payments to another person or entity, [the Hancock Defendants] will not be obligated to redirect the Assigned Payments to any such person or entity." *Id.*

NTNS assigned the receivable to Plaintiff Elttes, LLC on June 1, 2016 as part of a settlement agreement between (1) NTNS and (2) Elttes and Charfen Entities (the "Settlement Agreement"). Dkt. 1-1 at 32-41. Elttes is a Texas company controlled by Alex and Cady Charfen. *Id.* ¶ 19. The Charfens hired NTNS to provide their businesses with accounting, bookkeeping, and tax services. *Id.* ¶ 17. NTNS and its owner, Michael Goldberg, defrauded the Charfens, using their funds "for their own benefit, including to acquire the Rhinehart Receivable and other structured settlement receivables." *Id.* ¶ 17. Goldberg was convicted of wire fraud under 28 U.S.C. § 1343 and sentenced to serve 51 months in prison and pay $597,862.10 in restitution to Charfen Entities. *United States v. Goldberg*, 1:13-cr-00372-LY, Dkt. 41 (W.D. Tex. Aug. 12, 2013).

---

[1] John Hancock Life Insurance Company (USA) states that it was improperly designated John Hancock Life Insurance Company in the First Amended Petition. Dkt. 1 at 1 n.1.

The Settlement Agreement provides that NTNS will assign the receivable to Elttes and Goldberg will receive a credit against his restitution obligation once the assignment is completed. Dkt. 1-1 (Exhibit C). Elttes alleges that it has provided the Settlement Agreement to the Hancock Defendants, along with requests for them to acknowledge Elttes as the owner and recipient of the receivable, but they have refused. *Id.* ¶ 20.

The Hancock Defendants contend that their "administrative expense and burden . . . in connection with third-party factoring transactions and then reassignment of those payment rights by third-party purchasers is immeasurable." Dkt. 17 at 3. To minimize such exposure, they "require that, absent an amendment of the subject factoring order, [they] not be obligated to re-direct assigned payments to anyone other than the assignee under the subject order." *Id.*

Elttes filed this declaratory judgment action in Texas state court against NTNS and the Hancock Defendants. *Elttes, LLC v. NTNS Tax & Acct. Servs., Inc.*, D-1-GN-20-003422 (98th Dist. Ct. Travis County, Tex. June 30, 2020). In its First Amended Original Petition for Declaratory Judgment, its live pleading, Elttes seeks a declaratory judgment that:

1. All rights to the Rhinehart Receivable, including the right to receive and collect the 2012 Assigned Payments from John Hancock and all rights under the 2012 Order, were effectively and validly assigned by NTNS to Elttes by the Assignment and Release Agreement and Assignment of Structured Settlement;

2. Elttes is the current owner of the Rhinehart Receivable and all payments and payment rights transferred under the 2012 Order, to the exclusion of all other parties, and Elttes is entitled to receive and collect from John Hancock the 2012 Assigned Payments;

3. The Hancock Defendants shall pay and remit the 2012 Assigned Payments to Elttes as they come due, and by doing so they will satisfy and discharge their payment obligations relative to the 2012 Assigned Payments; that the Hancock Defendants have no obligation to make the 2012 Assigned Payments to any other person or entity, other than Elttes, and are relieved and discharged from any payment obligations relative to the 2012 Assigned Payments to NTNS, Kaybel, Rhinehart, or any other person or entity; and

4. Elttes is the assignee of the Rhinehart Receivable and the party entitled to receive the 2012 Assigned Payments and all payment rights under the 2012 Order.

The Hancock Defendants removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C. §1441 and now seek dismissal, arguing that Plaintiff fails to state a plausible claim for relief. Dkts. 1, 2. Elttes moves to remand, contending that removal was untimely. Dkt. 6.

## II.  Motion to Remand

Under 28 U.S.C. § 1441(a), a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." District courts have original jurisdiction over two types of cases: those arising under federal law, and those in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties. *Id.* §§ 1331, 1332(a); *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). The Hancock Defendants removed this case based on diversity jurisdiction under § 1332.

In relevant part, the removal statute provides:

> (b)(1)  The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .
>
> (3)  Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.
>
> (c)(1)  A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28 U.S.C. § 1446. Once a defendant removes an action from state to federal court, the plaintiff may move to remand. § 1447(c). On a motion for remand, the removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Although Elttes filed this action in state court on June 30, 2020, the original petition was never served on any of the defendants. Dkt. 6 at 1 ("Plaintiff acknowledges that none of the named defendants were served in the State Court Case until September of 2022."). Elttes filed a First Amended Petition on June 21, 2022. Dkt. 1-1. The Hancock Defendants aver – and Elttes does not dispute – that they were served on September 26, 2022. Dkt. 12 at 8. The Notice of Removal was filed twenty-one days later, on October 17, 2022. Dkt. 1.

Elttes argues that removal was untimely under § 1446(c) because the state court action had been pending for more than a year. The Hancock Defendants do not dispute that the case was removed more than one year after it commenced, but argue that removal was timely under § 1446(b)(1) because the Notice of Removal was filed within thirty days after they received the First Amended Petition.

Under § 1446(b)(1), a defendant's time to remove is triggered by formal service of process of the summons and complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). The thirty-day removal period "in no event begins to run prior to service of process on the defendant." *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 390 n.12 (5th Cir. 2000) (citing *Murphy Bros.*, 526 U.S. 344). The Court finds that the Hancock Defendants' time to remove did not begin to run until they were served on September 26, 2022.

Section 1446(c)(1) is inapplicable. Section 1446(c)(1) applies only to cases removed under § 1446(b)(3): those that, as "stated by the initial pleading," are not initially removable. *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 886 (5th Cir. 1998). Diversity jurisdiction has existed since inception of this case. Where a case is removable on initial pleading, removal is not governed by the one-year limitation of § 1446(c)(1). *Clention v. Glob. Indus., Inc.*, No. 4:22-CV-44-DMB-DAS, 2022 WL 17369868, at *3 (N.D. Miss. Dec. 2, 2022).

Because the Hancock Defendant's Notice of Removal was timely under § 1446(b)(1), the Court recommends that Plaintiff's Motion to Remand should be denied.

### III.  Motion to Dismiss

The Hancock Defendants move to dismiss under 12(b)(6), but their arguments that this case is not justiciable as an impermissible collateral attack on a state-court judgment are jurisdictional. *See Santoro v. Cnty. of Collin, Tex.*, No. 4:18-CV-00660, 2019 WL 5692190, at *3 (E.D. Tex. Aug. 16, 2019), *R. & R. adopted*, 2019 WL 4686361 (E.D. Tex. Sept. 26, 2019) (construing motion to dismiss for impermissible collateral attack under Rule 12(b)(1)). The Court addresses their jurisdictional arguments first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (stating that courts should consider jurisdictional attacks before any attack on the merits).

Under Rule 12(b)(1), a court must dismiss a claim if it lacks subject matter jurisdiction. A court properly dismisses a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161. Because the burden of proof for a motion to dismiss is on the party asserting jurisdiction, "the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

### A.  Justiciability

The Hancock Defendants argue that the Court lacks jurisdiction to grant declaratory relief because there is no actual controversy between the parties. Dkt. 2 at 13. They assert that: "The central question here is whether the Assignment and Release Agreement and Assignment of Structured Settlement between NTNS and Elttes can trump a valid and enforceable 2012 Order of the California Superior Court. The clear answer is no." Dkt. 17 at 1-2.

6

In deciding whether to dismiss a federal declaratory judgment action, a district court must determine (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003). Section 2201(a) provides that a declaratory judgment action is ripe for adjudication if it addresses an actual controversy. "As a general rule, an actual controversy exists where a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000) (cleaned up).

Elttes asks the Court to declare that NTNS's assignment of the Rhinehart Receivable to it under the Settlement Agreement was effective. The Hancock Defendants argue that, under the 2012 Order, they are not obligated to direct the payments to anyone other than NTNS. They contend that this case does not present an actual controversy because (1) NTNS is cooperating with Elttes, so there is no dispute between Elttes and NTNS as to the Settlement Agreement, and (2) the Hancock Defendants are not parties to the Settlement Agreement.

Elttes responds that NTNS is a proper party because its interests will be affected by the outcome of this suit. NTNS has not made an appearance, and Elttes represents that it is defunct. Elttes contends that whether there is a dispute between it and NTNS depends on whether Elttes is entitled to the receivable. As to the Hancock Defendants, Elttes argues that a dispute exists because the Hancock Defendants "are the obligors of these payments and refuse to make them to Elttes." Dkt. 16 at 4.

The Court finds that there is an actual controversy among the parties as to whether the Hancock Defendants must pay the Rhinehart Receivable to NTNS or to Elttes. Determination of Elttes's

claim for declaratory relief will establish the relative rights of the parties. The Court concludes that this case has adverse litigants and is justiciable under the federal Declaratory Judgment Act.

## B.  Collateral Attack

The Hancock Defendants also contend that this case presents an impermissible collateral attack on the 2012 Order in violation of the Full Faith and Credit Clause of the United States Constitution, U.S. Const. art. IV, § 1. Elttes responds that it is asking the Court to determine the validity and effect of the Settlement Agreement, and that "doing so does not require this Court to ignore, disregard, [or] modify the 2012 Order." Dkt. 16 at 15.

The California Structured Settlement Protection Act governs the transfer of structured settlement payment rights, which are "rights to receive periodic payments, including lump-sum payments, pursuant to a structured settlement agreement, whether from the settlement obligor or an annuity issuer." CAL. INS. CODE § 10134(l). Under the Act, no direct or indirect transfer of structured settlement payment rights is effective unless the transfer has been approved in advance in a final court order. CAL. INS. CODE § 10139.5. Congress has enacted federal legislation reinforcing state structured settlement protection acts. Under 26 U.S.C. § 5891(b)(2), a qualified order, such as the 2012 Order, is considered a "final order, judgment, or decree."

The parties do not dispute that the 2012 Order constitutes a final judgment. *See* Dkt. 16 at 15. When a party attacks a state court judgment, a federal court is bound by the Full Faith and Credit Clause and must give the judgment the same preclusive effect it would have under the law of the state in which it was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-81 (1984). A "two-level analysis is employed to determine whether a state court judgment must be enforced" in federal court:

> Where full faith and credit applies a judgment need be given only the same credit, validity, and effect which it had in the state where it was pronounced. Thus, if a state court judgment is subject to

> collateral attack in the state that rendered it, the judgment may be
> collaterally attacked in federal court.

*Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1020 (5th Cir. 1982) (cleaned up). A collateral attack includes any request for relief that is inconsistent with a prior judgment. *See Miller v. Meinhard-Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) ("Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.").

The Court finds that the declaratory relief Elttes seeks is inconsistent with the 2012 Order. In the 2012 Order, the California court approved the transfer of the Rhinehart Receivable to Kaybel and the assignment of Kaybel's right to payment to NTNS, also referred to as the "Assignee." Dkt. 1-1 at 11. The order states, in relevant part:

> 7. The limited assignments permitted herein are expressly limited to the subject annuity contract; and by their agreement to this Order, neither John Hancock Assignment nor John Hancock Life waives enforcement of the anti-assignment provisions in these or any other Settlement Agreement, Qualified Assignments, or Annuity Contracts.

> 9. It is agreed and understood that in the event that Kaybel and/or Assignee attempt to further assign the Assigned Payments to another person or entity, John Hancock Life and John Hancock Assignment will not be obligated to re-direct the Assigned Payments to any such person or entity. If Kaybel and/or Assignee is granted approval to further assign the Assigned Payments, Assignee will continue to service the payment due beginning on March 1, 2035 through and including August 1, 2048.

> 11. Any further transfer of structured settlement rights by Mr. Rhinehart and/or Kaybel and/or Assignee shall be made only after compliance with the requirements of the structured settlement protections acts applicable to this transfer.

*Id.* at 14-15.

Elttes argues that the 2012 Order does not preclude the relief it seeks because the order refers to NTNS's "successors in interest," and Elttes is, under the circumstances, NTNS's successor. But even if Elttes can be considered NTNS's successor in interest, the 2012 Order refers to "successors

in interest" only as to Kaybel and NTNS's obligations to the Hancock Defendants; the order

provides that  Kaybel, NTNS, and their affiliates and successors in interest will defend, indemnify,

and hold harmless the Hancock Defendants against any liability or costs related to the order.

Dkt. 1-1 at 13. The order makes no mention of successors in interest in connection with assignment

of the rights to payment. To the contrary, the 2012 Order expressly limits the Hancock Defendants'

obligation to redirect payment to anyone other than NTNS and states that the Hancock Defendants

do not waive enforcement of any anti-assignment provision. Dkt. 1-1 at 14. The plain text of the

2012 Order thus conflicts with the relief Elttes requests.

Elttes also argues that the 2012 Order does not prohibit NTNS from assigning Elttes its interest

in the judgment, as distinguished from assigning to Elttes the Rhinehart Receivable. But the

Settlement Agreement states that NTNS transfers the Rhinehart Receivable, not its interest in the

2012 Order:

> The parties hereto reaffirm the Rhinehart Assignment and the
> transfer of the Rhinehart Assignment Payments and all right, title,
> and interest of NTNS in, to, and under the Rhinehart Order (the
> 'Rhinehart Receivable') from NTNS to Elttes . . . .

Dkt. 1-1 at 34.

Because the relief Elttes seeks is inconsistent with the 2012 Order, its declaratory judgment

action constitutes a collateral attack on a state court judgment. Therefore, the Court must look to

California law to determine whether this collateral attack is permissible. *See Tenn. ex rel. Sizemore

v. Sur. Bank*, 200 F.3d 373, 378 (5th Cir. 2000) (holding that law of rendering state applies to

determine whether foreign state judgment should be granted full faith and credit); *see also United

States v. Wolas*, 520 F. Supp. 3d 114, 137-39 (D. Mass. 2021) (holding that full faith and credit

did not prohibit collateral attack on court-approved transfer because rendering state recognized

extrinsic fraud exception).

California law limits the circumstances in which a party may collaterally attack a final judgment, and such attacks are disfavored. 40A CAL. JUR. 3D JUDGMENTS § 337 (2023). Generally, a collateral attack is permissible only where the judgment is void on its face because the rendering court lacked jurisdiction. *Id.* But a stranger to an order may attack it for fraud. *Id.*

> A stranger to the record, who was not a party to the action in which the judgment was rendered . . . is not prohibited from impeaching the validity of the judgment in a collateral proceeding; but in order to do so he must show that he has rights, claims, or interests which would be prejudiced or injuriously affected by the enforcement of the judgment, and which accrued prior to its rendition . . . . Thus situated he may attack the judgment . . . for fraud or collusion . . . .

*Villarruel v. Arreola*, 66 Cal. App. 3d 309, 317 (Cal. Ct. App. 1977) (citation omitted); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004) ("It has long been the law that a plaintiff in federal court can seek to set aside a state court judgment obtained through extrinsic fraud.").

Elttes was not a party to the California transfer proceeding and therefore may seek to challenge the 2012 Order as procured by fraud. Under California law, the fraud must be "extrinsic." *Cedars-Sinai Med. Ctr. v. Superior Ct.*, 18 Cal. 4th 1, 10 (1998) (stating that "a final judgment may not be directly attacked and set aside on the ground that evidence has been suppressed, concealed, or falsified; in the language of the cases, such fraud is 'intrinsic' rather than 'extrinsic'"). Extrinsic fraud requires that "the aggrieved party [has been] deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense." *Moore v. Conliffe*, 7 Cal. 4th 634, 643 n.5 (1994) (quoting 8 WITKIN, CAL. PROC. § 204 (3d ed. 1985)); *Navarro v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 844 (Cal. Ct. App. 2005) ("The essence of extrinsic fraud is one party's preventing the other from having his day in court.").

Elttes submits evidence that NTNS used funds it fraudulently obtained from Elttes and Charfen Entities to acquire the Rhinehart Receivable in the California transfer proceeding. Dkt. 1-1 at 16,

32. The fraud was extrinsic to the proceeding, and as stated, Elttes was a "stranger to the record, who was not a party to the action in which the judgment was rendered." *Villarruel*, 66 Cal. App. 3d at 317; *see also Zander v. Cas. Ins. Co. of Cal.*, 259 Cal. App. 2d 793, 805 (Cal. Ct. App. 1968) (construing "intrinsic" and "extrinsic" fraud). Elttes's interests existed at the time of the transfer proceeding and would be harmed by the enforcement of the 2012 Order's non-assignment clause.

The Court finds that the Full Faith and Credit Clause does not bar Elttes from collaterally attacking the 2012 Order in this proceeding. Accordingly, the Court recommends that the Hancock Defendants' Motion to Dismiss should be denied.

## C. Attorneys' Fees

Finally, the Hancock Defendants argue that Elttes fails to state a claim for attorneys' fees under Rule 12(b)(6) because the Federal Declaratory Judgment Act does not authorize an award of attorneys' fees. Elttes did not respond to this argument.

Elttes pleads its claim for attorneys' fees under the Texas Declaratory Judgment Act, but a party may not rely on the Texas act to authorize attorneys' fees in a diversity case because the statute is not substantive law. The Court recommends that its claim for fees should be dismissed. *See Callan v. Deutsche Bank Tr. Co. Ams.*, 11 F. Supp. 3d 761, 771 (S.D. Tex. 2014) (dismissing claim for attorneys' fees because Federal Declaratory Judgment Act does not provide statutory authority to award fees); *Century Sur. Co. v. Taylor Disposal Operating, Inc.*, No. A-09-CA-624 LY, 2009 WL 3633903, at *5 (W.D. Tex. Oct. 29, 2009), *R. & R. adopted*, 2009 WL 10669498 (W.D. Tex. Nov. 30, 2009) (same).

## IV.  Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** John Hancock Life Insurance Company (USA) and John Hancock Assignment Company's Motion to Dismiss Plaintiff's Petition for Declaratory Judgment and Brief

in Support (Dkt. 2). The Court **RECOMMENDS** that the District Court **GRANT** the motion as to Plaintiff's request for attorneys' fees and **DENY** the motion in all other respects.

The Court **FURTHER RECOMMENDS** that Plaintiff's Motion to Remand (Dkt. 6) be **DENIED**.

**IT IS FURTHER ORDERED** that this case be **REMOVED** from the Magistrate Court's docket and **RETURNED** to the docket of the Honorable District Court.

## V.  Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on May 4, 2023.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE